OPINION
{¶ 1} Appellant, Raymond K. Frazier, III, appeals from his conviction and sentence for multiple counts of rape and gross sexual imposition. The case involves allegations of child sexual abuse over a period of six years involving two minor victims, Courtney and Joshua. For the following reasons, we affirm in part and reverse in part.
 {¶ 2} On July 30, 2004, the Franklin County Grand Jury returned a 27-count indictment against appellant charging rape and gross sexual imposition, R.C. 2907.02 and 2907.05. Counts 1 through 24 of the indictment alleged 18 counts of rape and six counts of gross sexual imposition committed against Courtney, a minor. The assaults against Courtney began when she was six and continued until she was 11 years of age. The first 24 counts were divided into six groups of four counts. Each group of four counts included three counts of rape (vaginal, digital vaginal penetration and cunnilingus), and one count of gross sexual imposition. Each group of four counts was alleged to have occurred during an approximate one-year period of time that corresponded to Courtney's age.
 {¶ 3} Counts 26 and 27 of the indictment charged appellant with two counts of rape involving Joshua, a minor who was between seven and nine years old at the time. Both counts alleged that appellant raped Joshua by engaging in fellatio between the dates of August 26, 2001 and August 26, 2003. Finally, Count 25 of the indictment charged appellant with gross sexual imposition for forcing Courtney and Joshua to have sexual contact during the same two-year time period, when Courtney was between the ages of eight and ten and Joshua was between the ages of seven and nine.
 {¶ 4} Appellant was tried before a jury beginning on May 2, 2005. The jury was unable to reach a verdict and a mistrial was declared. The case was tried before a second jury beginning on October 6, 2005. On October 11, 2005, the jury returned a verdict of guilty to all counts of the indictment.
 {¶ 5} Following a presentence investigation, the trial court sentenced appellant. The court grouped various counts together for sentencing. The court imposed concurrent sentences of ten years for each count of rape by vaginal intercourse in Group 1 (Counts 1, 5, 9, 13, 17 and 21); concurrent sentences of eight years for each count of rape by digital vaginal penetration in Group 2 (Counts 2, 6, 10, 14, 18 and 22); concurrent sentences of eight years for each count of rape by cunnilingus in Group 3 (Counts 3, 7, 11, 15, 19 and 23); concurrent sentences of three years for each count of gross sexual imposition involving Courtney in Group 4 (Counts 4, 8, 12, 16, 20 and 24); concurrent terms of ten years on each of the two counts of rape involving Joshua and a four-year sentence on Count 25 of the indictment, gross sexual imposition involving both children, Group 5. The court ordered the sentences within each group to be served concurrently, but that each group of concurrent sentences would be served consecutively to the other sentences. The total sentence imposed was 39 years in prison. In addition, the court conducted a sexual offender classification hearing pursuant to Chapter 2950 of the Revised Code and classified appellant as a sexual predator. The findings and sentence were journalized by entry filed November 30, 2005. This appeal followed.
 {¶ 6} Appellant raises three assignments of error:
 [I.] APPELLANT'S CONVICTION WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE
 [II.] THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW WAS VIOLATED BECAUSE THE CONVICTIONS FOR THE NUMEROUS COUNTS IN THE INDICTMENT WERE BASED ON INSUFFICIENT EVIDENCE.
 [III.] THE TRIAL COURT ERRED IN SENTENCING APPELLANT TO CONSECUTIVE, NON-MINIMUM SENTENCES BASED ON PROVISIONS OF OHIO'S FELONY SENTENCING SCHEME, INCLUDING R.C. § 2929.14(B), WHICH GOVERNS THE IMPOSITION OF MORE THAN MINIMUM PRISON TERMS, HELD TO VIOLATE BLAKELY
 {¶ 7} Appellant's first two assignments of error challenge the weight and sufficiency of the evidence presented at trial. Although similar, the concepts are distinct:
 * * * The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. With respect to sufficiency of the evidence, "`sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." [Citations omitted.] In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law.
State v. Thompkins (1997), 78 Ohio St.3d 380, 386. Thus, evidence is sufficient to support a conviction where, if believed, that evidence would allow any rational trier of fact to conclude that the state had proved each element of the offense beyond a reasonable doubt. SeeState v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 8} A conviction that is supported by sufficient evidence may nevertheless be reversed if a court of appeals unanimously finds that the verdict is against the manifest weight of the evidence. In a review of the weight of the evidence, an appellate court reviews the entire record, weighs the evidence and all reasonable inferences to be drawn therefrom, considers the credibility of the witnesses and then determines whether, in resolving conflicts in the evidence, the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."Thompkins, at 387, quoting with approval State v. Martin, (1983), 20 Ohio App.3d 172, 175. Stated another way, the test for sufficiency requires us to determine whether the state successfully met its burden of production of evidence on each element of the offense, while the test for manifest weight questions whether the state met its burden of persuasion. The only deference given in a manifest weight review is to the conclusions reached by a trier of fact. See Thompkins, at 390, Cook, J., concurring, citing State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 9} We first address appellant's second assignment of error, which disputes the sufficiency — or adequacy — of the evidence. In this review, we examine the evidence in a light most favorable to the prosecution to determine whether any rational trier of fact could find the defendant guilty. Jenks, supra.
 {¶ 1O} Appellant was convicted of multiple counts of rape and gross sexual imposition. Rape is defined in R.C. 2907.02(A)(1)(b), which provides, in pertinent part, as follows:
 No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * *
 The other person is less than thirteen years of age * * *
Gross sexual imposition is contained in R.C. 2907.05(A)(4), which provides that:
No person shall have sexual contact with another, not the spouse of the offender * * * or cause two or more other persons to have sexual contact * * * when * * *
 The other person, or one of the other persons, is less than thirteen years of age * * *
The primary difference between the two crimes is that rape involves "sexual conduct" while gross sexual imposition implicates "sexual contact." Both phrases are defined in R.C. 2907.01:
 (A) "Sexual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body * * * into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.
 (B) "Sexual contact" means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person.
 {¶ 11} Both victims testified at trial. Joshua was 11 years of age at the time of the second trial and in the sixth grade in school. He testified that during the years of the indictment, he lived in a house on Woodrow Avenue, Columbus, Ohio, with his mother, his older sister, Courtney, appellant, and occasionally appellant's son, Ray-Ray. Joshua described the floor plan of the house. At first, Joshua and Courtney shared one of the two bedrooms, while his mother and appellant shared the other bedroom. As the children grew older, Joshua's mother and appellant transformed the living room of the house into their bedroom and Joshua and Courtney each had one of the original bedrooms. Later, Joshua shared his bedroom with Ray-Ray when Ray-Ray moved in with the family. Joshua believed that Ray-Ray lived with them for about two years before he, Courtney and his mother moved from the Woodrow address.
 {¶ 12} Joshua did not remember how old he was when the sexual abuse began, but it happened more than once and always in the area that was either being used as the living room or as the adults' bedroom. Appellant would touch Joshua's penis with both his hands and his mouth. Appellant would also make Joshua touch appellant's penis. Joshua described how appellant performed fellatio upon him and then made Joshua perform fellatio on appellant.
 {¶ 13} Joshua said that Courtney would be in the same room while the abuse occurred. He saw appellant touching Courtney's private parts with his hands and mouth and watched appellant make Courtney do the same to him. Finally, Joshua testified that appellant would make him touch Courtney's private parts with his hands and mouth.
 {¶ 14} While Joshua could not remember how many times these things happened, he was certain that the abuse occurred multiple times. Sometimes appellant would show pornographic tapes in the VCR during these events. Sometimes he did not. Joshua said that appellant stopped sexually abusing him when Ray-Ray moved in.
 {¶ 15} Appellant asserts that Joshua's testimony was vague and he failed to give clear factual details of the offenses committed against him. We disagree. Joshua was clear that appellant put his mouth on Joshua's penis and then required Joshua to put his mouth on appellant's penis. Both acts constitute fellatio and, because Joshua was under 13 years of age at the time, both acts were the crime of rape. Joshua was equally clear that appellant required Joshua and Courtney, both under the age of 13, to touch each other's erogenous zones, acts that constitute gross sexual imposition. Joshua testified that the abuse occurred numerous times after he began school and did not end until Ray-Ray moved in with the family. That testimony places the assaults within the dates alleged in the indictment, between August 26, 2001 and August 26, 2003. Courtney and Ray-Ray both thought that Ray-Ray lived with the family about a year. However, regardless of whether Ray-Ray lived with the family for one year or two, Joshua's testimony was evidence that the sexual assaults took place within the time frame alleged in the indictment.[1] If believed by the trier of fact, Joshua's testimony was sufficient to prove each element of the crimes of rape and gross sexual imposition contained in Counts 25, 26 and 27 of the indictment.
 {¶ 16} Moreover, Courtney testified about the same instances when appellant abused both children. Courtney was 12 years old and in the seventh grade when she testified. She corroborated Joshua's testimony that appellant often, but not always, played pornography on the VCR. She witnessed appellant touching Joshua and testified that appellant would make Courtney and Joshua "kiss on each other's privates and put each other's privates on each other." (Tr. 99.) We find there was sufficient evidence to support Counts 25, 26 and 27 of the indictment.
 {¶ 17} Appellant asserts that the evidence was insufficient to support his conviction for the 18 counts of rape and six counts of gross sexual imposition where Courtney was the sole victim. For the following reasons, we find that there is sufficient evidence to support the six counts of vaginal rape (Counts 1, 5, 9, 13, 17 and 21), as well as the six counts of rape by cunnilingus (Counts 3, 7, 11, 15, 19 and 23), and the six counts of gross sexual imposition (Counts 4, 8, 12, 16, 20 and 24) as charged in the indictment. However, as explained below, we find the evidence is insufficient as a matter of law to support the charges of rape by digital vaginal penetration contained in Counts 2, 6, 10, 14, 18 and 22 of the indictment.
 {¶ 18} Courtney testified that she was subjected to years of sexual abuse at appellant's hand. Courtney said these events took place throughout the house, including her bedroom and the living room, both when that room was used as originally intended and later, when appellant converted it into a bedroom. Courtney related how appellant would enter her bedroom and touch her in various places, sometimes putting his penis in her vagina. When she told him the vaginal penetration hurt, appellant said it would only hurt for a minute. After the assaults, Courtney saw "white liquidy stuff" come out of appellant's penis and he would leave the room. At other times, he would touch her vagina with his hands and put his tongue on her vagina. She described how appellant also would place his mouth on her vagina and her breasts and would touch both areas with both his hands and his penis. The various sexual assaults took place during each of the six-year-long blocks of time alleged in the indictment and began when Courtney was in kindergarten and continued on through the fifth grade.
 {¶ 19} As with Joshua, Courtney was unable to remember a specific date when appellant first began to sexually abuse her. Before moving to the Woodrow Avenue house, Courtney, Joshua and their mother briefly lived with appellant at his mother's home. Courtney could not recall whether the abuse started at appellant's mother's house or at the Woodrow address, but she knew that the abuse was going on when she was in kindergarten and that it continued until she was in fifth grade when she told her mother what was happening to her. Courtney testified that she was five or six years old when she was in kindergarten and 11 years old when she was in fifth grade. Therefore, the temporal aspects of the various counts of the indictment were satisfied.
 {¶ 20} The following exchange at pages 111-113 of the trial transcript summarizes the time frames during which appellant sexually assaulted Courtney:
 Q: So you told your mom when you were 11 or 12. Did it keep happening right up until when you told her?
 A: Well, it didn't happen that day I told her.
 Q: Yeah. I don't mean that day. Was it still going on —
 A: Uh-huh.
 Q: — right around that time?
 A: Uh-huh.
 Q: And the stuff that was going on, was it him touching your privates with his privates?
 A: Uh-huh.
 Q: And him putting his penis in your vagina?
 A: Uh-huh.
 Q: And his tongue on your vagina?
 A: Uh-huh.
 Q: And the other things that you talked about as well?
 A: Uh-huh.
 Q: Was he touching your breasts with his hands?
 A: Uh-huh.
 Q: And did he have you touch his privates with your hands?
 A: Uh-huh.
 Q: So that was all — all the things that you talked about this afternoon, that all happened right up until the time you guys moved out? Maybe not the day you moved out but —
 A: Yeah.
 Q: And what grade were you in when you left?
 A: I just finished fifth grade.
 Q: Where did you finish fifth grade? Southwood? Was that at Southwood?
 A: Yeah.
 Q: And the whole time you lived there, you went through all your grades, first, second, third, fourth grade; is that right?
 A: When I lived on Woodrow? I think so, yeah.
 Q: The stuff that would happen to you, that you talked about in the different bedrooms, did that happen to you in fourth grade?
 A: Uh-huh.
 Q: Got to say yes or no. All right?
 A: Yeah.
 Q: And did it happen in third grade?
 A: Yeah.
 Q: Second grade?
 A: Yeah.
 Q: First grade?
 A: Uh-huh.
 {¶ 21} Regardless of her inability to recall the exact dates or specific details of each encounter, Courtney testified that appellant repeatedly and at least once during each year of the indictment (1) put his penis in her vagina; (2) touched her vagina (her "privates") with his hand or penis; (3) put his tongue on her vagina; and (4) touched her breasts with his hands. Courtney was clear that all of these things occurred in each of six different school years: when she was in kindergarten, first, second, third, fourth and fifth grades. Each time appellant inserted his penis into her vagina, appellant committed the offense of vaginal rape. Each time appellant placed his tongue on her vagina, he committed the offense of rape by cunnilingus. Each time appellant touched her breasts with his hands, he committed the offense of gross sexual imposition. Each time appellant touched her vagina with his hands, he committed the offense of gross sexual imposition. Appellant continued to commit various offenses during the entire time that Courtney, Joshua and their mother lived with appellant on Woodrow Avenue. Courtney was clear that the abuse began in kindergarten and continued through fifth grade, a total of six years. These time frames encompass the six groups, each containing four counts that correspond to Courtney's age during each of the six years set out in the indictment. Therefore, if believed, Courtney's testimony alone provides sufficient evidence to support each element of vaginal rape contained in Counts 1, 5, 9, 13, 17 and 21 of the indictment; rape by cunnilingus in Counts 3, 7, 11, 15, 19 and 23 of the indictment and gross sexual imposition by touching her breasts in Counts 4, 8, 12, 16, 20 and 24 of the indictment. In addition, as discussed below at ¶ 27, Courtney's testimony that appellant continually touched her "privates" or vagina with his hand during the six years of the indictment provides sufficient evidence to support each element of the offense of gross sexual imposition as a lesser included offense of the counts which charged rape by digital vaginal penetration.[2]
 {¶ 22} Moreover, other evidence supported Courtney's testimony. Kerri Marshall, a licensed social worker at Columbus Children's Hospital, described her interview with Courtney regarding her allegations of sexual abuse. Ms. Marshall read excerpts from the report she produced shortly after she interviewed Courtney. Those excerpts corroborated Courtney's testimony at trial.
 {¶ 23} The state also presented the testimony of Debra Lambourne, a DNA analyst at the Columbus police crime laboratory. Ms. Lambourne explained the process undertaken to obtain and compare DNA samples for evidence. She stated that she extracted DNA from a semen stain on Courtney's bed sheet, and compared that DNA with a sample of DNA taken from appellant with an oral swab. The semen stain from the sheet from Courtney's bed contained appellant's DNA.
 {¶ 24} Gail Horner, a pediatric nurse practitioner at Children's Hospital also appeared on behalf of the state. Ms. Horner testified that she conducted a physical examination of Courtney after Kerri Marshall interviewed her. Ms. Horner explained the procedure she followed while examining Courtney and related that the results were "normal." However, Ms. Horner explained that it is at least possible, if not probable, for a child to have a normal physical exam despite a history of sexual abuse.
 {¶ 25} The testimony offered by defense witnesses does not necessarily make the testimony of Courtney or Joshua incredible. Courtney's family doctor, Julia Castrop, M.D., testified that, during Courtney's regular medical visits, she saw nothing that caused her to suspect sexual abuse. However, Dr. Castrop also testified that not all children present outward physical symptoms of sexual abuse. Kevin Daberkow, Courtney's fifth grade teacher, and Carla Gail, the principal of Courtney's school, did not observe anything that caused them to believe Courtney was being sexually abused. Appellant's son, Ray-Ray, testified that his father never molested him and he never witnessed his father molest Courtney or Joshua. Finally, appellant testified on his own behalf and denied all charges. None of this testimony negates the sufficiency of the testimony presented by the state.
 {¶ 26} Therefore, with the exception of the series of rapes by digital vaginal penetration set out in Counts 2, 6, 10, 14, 18 and 22 of the indictment, we find that the evidence is sufficient to prove each of the essential elements of the remaining crimes beyond a reasonable doubt. Appellant's second assignment of error is overruled with regard to Counts 1, 3, 4, 5, 7, 8, 9, 11, 12, 13, 15, 16, 17, 19, 20, 21, 23, 24, 25, 26 and 27 of the indictment.
 {¶ 27} Although we find that there was sufficient evidence to support the verdicts on most of the counts of the indictment, we find that the state failed to provide any evidence to establish a key element of the crime of rape by digital vaginal penetration as alleged in Counts 2, 6, 10, 14, 18 and 22 of the indictment. Courtney testified that appellant repeatedly touched her vagina with his hands. Touching the erogenous zone of another with the purpose of sexually arousing either person meets the definition of sexual contact, R.C. 2907.01(B). However, appellant was charged with rape in Counts 2, 6, 10, 14, 18 and 22 of the indictment. Rape involves sexual conduct as defined in R.C. 2907.01(A), not sexual contact. In the case of rape by digital vaginal penetration, at least some penetration, however slight, is required. Although Courtney testified that appellant touched her vagina or "private parts" with his hand, Courtney did not testify that appellant inserted his hand or fingers into her vagina. Because the prosecution failed to present any evidence that appellant digitally penetrated Courtney's vagina, the evidence is insufficient to support the convictions for rape by digital vaginal penetration as set forth in Counts 2, 6, 10, 14, 18 and 22 of the indictment.
 {¶ 28} Where the evidence is insufficient to show that defendant is not guilty of the degree of crime for which he was convicted, but the evidence is sufficient to support a verdict of guilty of a lesser degree thereof or of a lesser crime included in the greater crime, the trial court may modify the verdict accordingly and pass sentence on the verdict as modified. See R.C. 2945.79(D) and Crim.R. 33(D). Both R.C.2945.79(D) and Crim.R. 33(D) provide a reviewing court with the power to modify a judgment. State v. Reed (1981), 65 Ohio St.2d 117, at 123. The Ohio Rules of Appellate Procedure also authorize a court of appeals to modify a judgment. See App.R. 12(B) and State v. Hagwood, Franklin App. No. 04AP-879, 2005-Ohio-2131, at ¶ 20.
 {¶ 29} Although the convictions for rape by digital vaginal penetration contained in Counts 2, 6, 10, 14, 18 and 22 of the indictment are not supported by sufficient evidence of penetration, the evidence presented is sufficient to find that appellant committed six counts of gross sexual imposition as lesser offenses. Therefore, pursuant to Crim.R. 33(A)(4), R.C. 2945.79(D) and App.R. 12(B), the verdicts regarding Counts 2, 6, 10, 14, 18 and 22 of the indictment are modified from guilty of rape by digital vaginal penetration to guilty of gross sexual imposition, felonies of the third degree. The second assignment of error is sustained to this extent. In all other respects, the second assignment of error is overruled.
 {¶ 30} We next turn to appellant's first assignment of error. Appellant claims that the verdict below is against the manifest weight of the evidence. Pursuant to the standard set out in Thompkins, we review the entire record, weigh the evidence and all reasonable inferences to be drawn therefrom, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Thompkins, at 387.
 {¶ 31} As discussed above, the state presented substantial evidence at trial supporting appellant's convictions as originally charged or modified by this court. It is well within the province of the jury to believe the compelling testimony of Courtney, Joshua, Kerri Marshall and Debra Lambourne over the testimony of non-observers called as defense witnesses. The jury was not required to believe appellant's denials. A jury is free to believe or disbelieve all or none of the testimony of any witness. Having carefully reviewed the testimony of the two victims, we find their testimony credible. The jury did not lose its way and there is no manifest miscarriage of justice. Therefore, with the modification of Counts 2, 6, 10, 14, 18 and 22 of the indictment to reflect the crimes of gross sexual imposition, we find that the verdicts are not against the manifest weight of the evidence.
 {¶ 32} Appellant divides his third assignment of error into two related parts. First, appellant claims his trial counsel was ineffective for failing to raise a claim of sentencing error under Blakely v.Washington (2004), 542 U.S. 296, 124 S.Ct. 2531. Second, appellant claims that the trial court committed plain error by sentencing him to consecutive, non-minimum prison terms in violation of Blakely andState v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856.
 {¶ 33} Appellant was sentenced after Blakely, but before the Ohio Supreme Court decided Foster, which applied Blakely to the Ohio sentencing statutes.[3] This court has consistently held "that aBlakely challenge is waived by a defendant sentenced afterBlakely if it was not raised in the trial court." State v.Draughon, Franklin App. No. 05AP-860, 2006-Ohio-2445, ¶ 8. See, also,State v. Silverman, Franklin App. No. 05AP-837, 2006-Ohio-3826;State v. Cook, Franklin App. No. 05AP-515, 2006-Ohio-3443; and State v.Mosley, Franklin App. No. 05AP-701, 2006-Ohio-3102. We continue to believe that the pronouncements of the Supreme Court in United States v.Booker (2005), 543 U.S. 220, 125 S.Ct. 738, are applicable toBlakely claims under Ohio sentencing laws.[4] Therefore, we adhere to our previous holdings that waiver may be applied to Blakely claims raised for the first time on appeal where sentencing takes place after the Blakely decision was announced.
 {¶ 34} Before proceeding further, we note that certain constitutional defects in a criminal proceeding are considered structural errors. A structural error is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." Arizona v. Fulminante (1991), 499 U.S. 279, 310,111 S.Ct. 1246. Blakely error is not considered structural error. Washington v.Recuenco (2006), 548 U.S.__, 126 S.Ct. 2546. Foster was based onBlakely. Hence, Blakely-Foster error is non-structural error.
 {¶ 35} Appellant argues that our review of his sentence should be under the plain error standard. Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." However, claims of plain error are viewed "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
 {¶ 36} The provisions of Crim.R. 52(B) limit a reviewing court's ability to find plain error:
 * * * First, there must be an error, i.e., a deviation from a legal rule. [Citation omitted.] Second, the error must be plain. To be "plain" within the meaning of Crim. R. 52(B), an error must be an "obvious" defect in the trial proceedings. [Citations omitted.] Third, the error must have affected "substantial rights." We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial. [Citations omitted.]
 Even if a forfeited error satisfies these three prongs, however, Crim.R. 52(B) does not demand that an appellate court correct it. Crim.R. 52(B) states only that a reviewing court "may" notice plain forfeited errors; a court is not obliged to correct them. We have acknowledged the discretionary aspect of Crim.R. 52(B) by admonishing courts to notice plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long, 53 Ohio St.2d 91, * * * paragraph 3 of the syllabus. * * *"
State v. Barnes (2002), 94 Ohio St.3d 21, 27. The United States Supreme Court has suggested that appellate courts correct plain error "if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" United States v. Olano (1993), 507 U.S. 725,736, 113 S.Ct. 1770, 1779, quoting United States v. Atkinson (1936),297 U.S. 157, 56 S.Ct. 391, 392.
 {¶ 37} Plain error must be obvious as well as outcome-determinative.Barnes, at 28, citing State v. Sanders (2001), 92 Ohio St.3d 245, 257. Therefore, plain error occurs only when, but for the error, the outcome of the trial clearly would have been different. Long; State v. Hill
(2001), 92 Ohio St.3d 191, 203.
 {¶ 38} We find that appellant's plain error analysis is not persuasive. Although prior to Foster, a trial court was required to make certain factual determinations before it could impose a consecutive or non-minimum sentence, "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Foster, paragraph seven of the syllabus. Therefore, it was significantly more difficult for a trial court to impose non-minimum or consecutive sentences beforeFoster than it is today.
 {¶ 39} Here, the trial court made statutory findings necessary to impose non-minimum, consecutive sentences in this case. If this case were to be subject to sentencing today, none of those findings would be required. We find it is not probable that re-sentencing would produce a different result. Long, supra. Therefore, we reject appellant's argument that his sentence amounts to plain error.
 {¶ 40} Although appellant's third assignment of error raises a plain error challenge to his sentence, in light of the holding inFoster that portions of R.C. 2929.14 are unconstitutional, we will examine appellant's claim of sentencing error under the standard for constitutional error. While structural error is not subject to the harmless error analysis, non-structural errors may be found harmless beyond a reasonable doubt. Chapman v. California (1967), 386 U.S. 18,87 S.Ct. 824; Arizona, at 306-310, 111 S.Ct. 1246. As noted above, at ¶ 34, Blakely-Foster error is non-structural. Therefore,Blakely error is evaluated under a harmless-error analysis.Washington, at 2553.
 {¶ 41} We recently addressed Blakely-Foster error under the non-structural, harmless error standard. See State v. Peeks, Franklin App. No. 05AP-1370, 2006-Ohio-6256. In Peeks, we concluded that a sentence rendered unlawful under Blakely-Foster does not call into question the jurisdiction or authority of the court to impose sentence and, therefore, the sentence is voidable rather than void.Peeks, at ¶ 12.
 {¶ 42} We adhere to the views expressed in Peeks. Although the fact-finding process required by R.C. 2929.14 was declared unconstitutional by Foster and, therefore, the fact-finding process engaged in by the trial court was error, the error is not jurisdictional error that would render the sentence void. Reversal and remand for re-sentencing is not mandatory, but is required only if the sentencing error were not found harmless. Peeks, at ¶ 13-14.
 {¶ 43} As in Peeks, we conclude that the sentencing error in this case is harmless beyond a reasonable doubt:
 * * * A trial court's application of the statutory sentencing scheme in existence before Foster only benefited defendants. Before Foster, a trial court had to make a number of findings before it could sentence a defendant to consecutive sentences. These required findings limited the trial court's sentencing discretion and prohibited consecutive sentences unless each and every finding was made. * * *
Peeks, at ¶ 15. Absent the findings required by those sections, a trial court could not impose more than minimum, concurrent sentences. Moreover, even if the findings were made, the court was not required to impose more than minimum concurrent sentences.
After Foster, the trial court has full discretion to impose any sentence authorized by the General Assembly, including consecutive sentences. Although the trial court committed Foster error in conducting the fact-finding process required by R.C. 2929.14(E)(4) and 2929.41(A), that error could only have benefited appellant and could not be prejudicial. Therefore, we find that the error was harmless beyond a reasonable doubt. The second portion of the third assignment of error lacks merit.
 {¶ 44} As part of his third assignment of error, appellant also asserts that he was denied effective assistance of counsel due to defense counsel's failure to raise a Blakely objection during sentencing. To establish a claim of ineffective assistance of counsel, appellant must demonstrate that his attorney's performance was deficient and that the deficient performance prejudiced appellant's defense.Strickland v. Washington (1984), 466 U.S. 668, 687-688, 104 S.Ct. 2052. Appellant must demonstrate actual prejudice, that is, "but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.[5] We have already determined that theBlakely-Foster error raised by appellant was not plain error as claimed by appellant, and was harmless beyond a reasonable doubt. Therefore, even assuming a deficiency in counsel's performance, appellant cannot establish that counsel's failure to raise a Blakely claim resulted in actual prejudice. Without prejudice, appellant's Sixth Amendment ineffective counsel claim fails. Therefore, the first portion of the third assignment of error is overruled.
 {¶ 45} We have overruled appellant's first and third assignments of error and have sustained in part the second assignment of error to the extent of modification of the verdict on Counts 2, 6, 10, 14, 18 and 22 of the indictment. The judgment of conviction is affirmed in part, reversed in part and remanded to the trial court for further proceedings consistent with this opinion. On remand, the trial court is instructed to re-sentence appellant on Counts 2, 6, 10, 14, 18 and 22 of the indictment as offenses of gross sexual imposition. In all other respects, the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed in part and reversed in part; cause remanded.
KLATT and DESHLER, JJ., concur.
DESHLER, J., retired of the Tenth Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.
[1] It is unnecessary that the state prove that an offense took place on a specific date or time. Unless the date or time of an offense is an element, such as in the illegal sale of liquor beyond the time allowed by a license, it is sufficient if the state proves that the offense took place on or about the date or dates alleged. State v. Sellards (1985),17 Ohio St.3d 169.
[2] Counts 2, 6, 10, 14, 18 and 22 of the indictment.
[3] Blakely was decided on June 24, 2004. Foster was decided on February 27, 2006. Appellant's sentence was journalized on November 20, 2005.
[4] Booker expressly noted that the "ordinary prudential doctrines," such as waiver, may be applied to Blakely claims.
[5] The standard for review of claims of plain error is slightly different from that applied to claims that counsel was ineffective. Plain error occurs when, but for the error, the outcome or result of the trial would have been different. In contrast, to reverse upon a claim that counsel was ineffective requires a reasonable probability that, but for the errors, the result would have been different. A reasonable probability is one sufficient to undermine confidence in the outcome of the trial.